[994 NYS2d 809]

30 West 130th Street Corp., Petitioner, v Latoya White, Respondent.

Civil Court of the City of New York, New York County, September 3, 2014

## APPEARANCES OF COUNSEL

*SRO Law Project*, New York City (*Masooma Javaid* and *Martha Weithman* of counsel), for respondent.

*Rose & Rose*, New York City (*Zachary J. Rothken* of counsel), for petitioner.

## OPINION OF THE COURT

KELLY O'NEILL LEVY, J.

Petitioner commenced the instant nonpayment proceeding on January 13, 2014. It is undisputed that respondent moved into petitioner's rent-regulated single room occupancy (SRO) building in or around February 2010 at a monthly rent of $500. On June 12, 2014 respondent, by counsel, filed a motion for discovery pursuant to CPLR 408 arguing that during the course of this action, she discovered that her rent had been increased from the previous tenant and seeks discovery to establish her rent overcharge defense. Petitioner filed a cross motion on July 17, seeking an order striking respondent's first affirmative defense and counterclaim of rent overcharge. Respondent filed an affirmation in further support of her motion and in opposition to the cross motion. The court will examine each motion in turn.

Respondent's Motion for Discovery

Discovery, permissible by leave of court in a summary proceeding to narrow the issues to be presented at trial, requires the moving party to demonstrate ample need. (*Banchik v Ruggieri*, NYLJ, Nov. 18, 1998 at 29, col 4, 1998 NY Misc LEXIS 772 [Civ Ct, NY County 1998].) In *New York Univ. v Farkas*

(121 Misc 2d 643 [Civ Ct, NY County 1983]), the court outlined six factors to be considered in determining ample need for disclosure: (i) whether, in the first instance, the petitioner has asserted facts to establish a cause of action; (ii) whether there is a need to determine information directly related to the cause of action; (iii) whether the requested disclosure is carefully tailored and is likely to clarify the disputed facts; (iv) whether prejudice will result from the granting of an application of disclosure; (v) whether the prejudice can be diminished or alleviated by an order fashioned by the court for this purpose; and (vi) whether the court, in its supervisory role, can structure discovery so that pro se tenants, in particular, will be protected and not adversely affected by a landlord's discovery requests.

Petitioner objects to discovery, arguing that the overcharge claim lacks merit. The court finds that the *Farkas* factors are satisfied. Here, respondent presents facts to establish a cause of action and makes an effective argument that a rent overcharge may have occurred and the nature and extent of the improvements that were made to the property is directly related to that issue. Additionally, the court finds that respondent's document demand is carefully tailored, likely to clarify the disputed facts, and will not result in prejudice. Therefore, respondent's motion for discovery is granted.

Petitioner's Cross Motion

■ Petitioner cross-moves for an order striking respondent's first affirmative defense and counterclaim of rent overcharge. On a motion to strike an affirmative defense under CPLR 3211 (b), the plaintiff "bears the burden of demonstrating that the affirmative defense is 'without merit as a matter of law' " (*Greco v Christoffersen*, 70 AD3d 769, 771 [2d Dept 2010], quoting *Vita v New York Waste Servs., LLC*, 34 AD3d 559, 559 [2d Dept 2006]). Where an affirmative defense raises an issue of fact, it should not be stricken. (*See Atlas Feather Corp. v Pine Top Ins. Co.*, 128 AD2d 578, 579 [2d Dept 1987].) Where, as here, a counterclaim is "inextricably intertwined" with petitioner's claim for recovery, it shall not be stricken. (*See SAP V/Atlas 845 WEA Assoc. NF L.L.C. v Spiritos*, NYLJ, Mar. 4, 2013 at 27 [Civ Ct, NY County 2013] [permitting rent overcharge counterclaim], citing *Haskell v Surita*, 109 Misc 2d 409 [Civ Ct, NY County 1981], and *Coronet Props. Assoc. v Lederer*, NYLJ, Feb. 21, 1986 at 12, 1986 NY Misc LEXIS 3166 [App Term, 1st Dept 1986].)

Petitioner argues here that the agreed-upon rent does not constitute an overcharge. According to petitioner's records, the

previous regulated rent was $330. Petitioner rightly examines 9 NYCRR part 2522 for legal increases or decreases. (*See* 9 NYCRR 2522.1 ["Legal regulated rents may be increased or decreased only as hereinafter specified"].) Prior to respondent moving in, the apartment was vacant, so petitioner looks first to the section of 9 NYCRR part 2522 titled "Rent adjustments upon vacancy or succession." Petitioner argues that under 9 NYCRR 2522.8 (a) (2) (ii) (*b*), there is justification to raise the rent by $100 to $430 per month:

> "[I]f the previous legal regulated rent was at least $300 and no more than $500, in no event shall the total increase pursuant to this subdivision be less than $100 per month. All such increases shall be in lieu of any allowance authorized for the one or two year renewal component of the guideline promulgated by the rent guidelines board, but shall be in addition to any other increases authorized pursuant to the RSL and this Code, including adjustments pursuant to section 2522.4(a) of this Part, and any applicable vacancy allowance authorized by the rent guidelines board."

Petitioner then argues that the Rent Guidelines Board's determination for rent increases during the applicable period should be applied. Petitioner cites to "Rent Guidelines Board Order #39," which granted a 5.75% rent increase for two-year leases in the period two years prior to respondent moving in. (*See* NY City Rent Guidelines Bd 2007 Apartment & Loft Order #39.) Applying the 5.75% increase to the $430 vacancy rent, petitioner argues the legal rent was $454.72 prior to improvements. Finally, petitioner alleges that the rent could be legally increased by an additional $83.96, representing one-fortieth of the $3,358.57 cost of alleged improvements, for a monthly rent total of $538.68. (Rent Stabilization Code [9 NYCRR] § 2522.4.) Petitioner then allegedly opted to charge respondent only $500.

The $100 increase under 9 NYCRR 2522.8 (a) (2) (ii) (*b*) expressly states that it "shall be in lieu of any allowance authorized for the . . . two year renewal component of the guideline promulgated by the rent guidelines board,"[1] yet petitioner asks the court to include the 5.75% allowance authorized for two-year renewal leases per guidelines promulgated by the Rent Guidelines Board. Secondly, the $100 rent increase allowable

---

1. The court notes that petitioner quoted 9 NYCRR 2522.8 (a) (2) (ii) (*b*) "in relevant part" in his cross motion, but excised this key sentence.

under 9 NYCRR 2522.8 (a) (2) (ii) (*b*) may not apply here as the opening language of 9 NYCRR 2522.8 states that "[t]he legal regulated rent *for any vacancy lease* entered into after June 15, 1997 shall be as hereinafter provided in this subdivision." (9 NYCRR 2522.8 [a] [emphasis added].)

Petitioner further asserts that 5.75% should be added to the legal regulated rent because a Rent Guidelines Board's determination allowed a 5.75% increase to "two-year renewal lease[s] commencing on or after October 1, 2007 and on or before September 30, 2008" despite the property in question being vacant and that same document stating "No 'vacancy allowance' is permitted under this Order." Petitioner cites to "2007 Apartment & Loft Order #39" which may not apply here as the property at issue is a single room occupancy building which may invoke New York City Rent Guidelines Board 2009 Hotel Order # 39, which applies to "leases commencing October 1, 2009 through September 30, 2010," during which period respondent moved into the subject premises.[2] This order calls for an allowable rent adjustment of 0% and also provides for "No 'vacancy allowance.' "

Petitioner's alleged improvements to the property would allow an increase of $83.96, representing one-fortieth of the $3,358.57 in improvements allegedly made. (*See* Rent Stabilization Code § 2522.4.) Petitioner has not submitted sufficient proof to establish the cost of the improvements however. The submitted checks add up to $2,335 and some have dubious relevance—such as an $825 check made out to "Ashley Dixon" with no explanation of its purpose.

Petitioner next argues that respondent's defense should be stricken because in order to prevail, respondent must examine rental history prior to four years ago, which respondent may not do without proving fraud, which cannot be shown here. (*See Matter of Boyd v New York State Div. of Hous. & Community Renewal*, 23 NY3d 999 [2014].) While courts have understood the legislature to have "specifically 'preclude[d] examination of the rental history of the housing accommodation prior to the four-year period preceding the filing of the complaint,' " (*Zafra v Pilkes*, 245 AD2d 218, 219 [1st Dept 1997]), given the facts as alleged here, past rental history may be examined. Petitioner rightly notes that the legal regulated rent in this case is

---

**2.** While respondent did not have a lease, the court recognizes that 2009 Hotel Order # 39 might not apply.

determined based on the formula set forth in Rent Stabilization Code § 2526.1 (a) (3) (iii), but the court notes that Rent Stabilization Code § 2526.1 (a) (2) (ix) states:

"For the purpose of establishing the legal regulated rent pursuant to 2526.1(a)(3)(iii) [of this Title] where the apartment was vacant or temporarily exempt on the base date, review of the rental history of the housing accommodation prior to the four-year period preceding the filing of a complaint pursuant to this section *shall not be precluded.*" (Emphasis added.)

Lastly, petitioner argues that the rent was legal because the apartment was vacant when respondent moved in, thus setting the legal rent to the price they then agreed upon. (*See Matter of Ogunrimde v New York State Div. of Hous. & Community Renewal*, 2010 NY Slip Op 33350[U] [Sup Ct, NY County 2010].) However, unlike in *Ogunrimde*, here there was no agency decision to that effect in this case.

As petitioner has failed to demonstrate that respondent's defense is without merit and the defense raises factual issues, and the counterclaim is inextricably intertwined with petitioner's claim, the court denies the cross motion.